PATRICK H. MURRAY, Appellant, *v.* NATIONAL SURETY COMPANY, Respondent.

Third Department, June 21, 1929.

*John F. Murray* and *William H. Murray* [*Herbert F. Roy* of counsel], for the appellant.

*Parsons & McClung* [*John T. Norton* and *Benjamin McClung* of counsel], for the respondent.

HILL, J.  Plaintiff seeks to recover from the defendant under a written contract.  Prior to its preparation, defendant was obligated to the State of New York for about $150,000 because a contractor, for whom it was surety, had abandoned the construction of a highway.  The State had a balance of $117,000 available to complete the contract.  If the new contract did not exceed that amount, there would be no liability on the bond.  Plaintiff was a road contractor.  It was agreed between the parties that plaintiff should bid not more than $117,000 and not less than a sum for which he could do the work.  The contract also provided: " Upon completion of said contract, and final payment by the State, the party of the first part agrees to pay party of the second part any deficit between the sum so paid by the State and the sum of $117,000; provided, however, that said sum of $117,000 shall be reduced by the amount of the contract price of any item eliminated by the State."

The construction contract was awarded to plaintiff on his bid of $105,306.14.  This bid complied with the terms of his agreement with the defendant, as it was less than the maximum named, and the road was completed at a figure which gave him a profit.  Items of the contract price of $5,588.98 were eliminated, and a few small items added.  Plaintiff received $100,123.31 from the State. Defendant contends that plaintiff had agreed to bid $117,000, and that their contract was incorrectly prepared.  This is not sustained, as the contract was prepared by defendant's own attorney, and a few days after the bid was made defendant learned the amount, and in effect approved it, by furnishing a bond for the faithful performance of the contract with the State.

Defendant further argues that the improvidence of the contract is so obvious that an error is suggested thereby.  Consideration of the interests, obligations and desires of the parties at the time of making the contract will be helpful in the quest for its meaning and intent.  Defendant was then obligated on a bond for nearly $150,000.  A new bid of $117,000 or less would discharge liability on the bond.  Plaintiff had no reason to contract with defendant unless he was to receive some benefit.  If we assume that defendant believed the work would cost substantially $117,000, the contract was wise and reasonable for each of the parties.  Defendant was justified in this belief as of the four bidders other than plaintiff,

three estimated the cost from $4,000 to $22,000 above that figure, and one less than $2,000 below.

The contract provided that the payment by defendant shall be " reduced by the amount of the contract price of any item eliminated." The amount of the eliminations and the payment by the State should be deducted from $117,000. Plaintiff should have judgment for the difference of $11,287.71.

VAN KIRK, P. J., and HINMAN, J., concur; WHITMYER, J., dissents and votes for affirmance; HASBROUCK, J., dissents, with an opinion.

HASBROUCK, J. (dissenting). The surety company was under obligation to complete a contract upon which its principal had defaulted. There was in the hands of the State $117,000 to pay for finishing the contract. To protect itself it needed a party who could do the work for $117,000. In the preliminary writing plaintiff agreed to bid $117,000. He became fearful of obtaining the contract at that sum so he bade without the knowledge of the surety company to whom he refused to show his bid, $104,868. The result of his bidding a sum less than $117,000 would be to take the money representing the difference between his bid and $117,000 out of the surety company. It needed the concealment of the amount of his bid at the time of its making from the company to lay the basis of the claim in the present suit against the company. The bid of a lower amount than $117,000 was at war with the plaintiff's letter or contract of June tenth wherein he agreed to bid $117,000 and required the guaranty of the company that if he did not get from the State the amount of such bid that the surety company would pay him the difference. The bid was to take place June fifteenth.

That agreement was followed by another agreement delivered before and in ignorance of the bid prepared and about to be made by Murray.

The plaintiff relies upon the writing. Notwithstanding his estimated profit of nearly $10,000 on his bid he claims some $16,000 more from the surety company which he was to protect by making a bid of $117,000. Because it is so " nominated in the bond " he clamors for his " pound of flesh."

Now what is in the bond? There is a recital and it runs in these words: " Whereas the party of the second part *has agreed with the party of the first part* to submit a bid to the State Highway Commission on said reletting for the completion of said contract." The contract signed therefor for the bid to be made refers to the bid agreed upon. But the only bid agreed upon was the one stated in plaintiff's Exhibit " B." Bear in mind the contract of

June fifteenth was signed before Murray made the $104,868 bid. There is no militancy between the bid agreed to be made and the language of the agreement except the exercise of care on the part of the surety company that Murray should not bid more than $117,000. Bidding more than that sum would have meant that the surety company would have to pay Murray the difference between the amount the State had applicable to payment for the work and the amount of any bid above that sum.

It being established that by the agreement signed Murray was obliged to bid $117,000, it follows that the deficit contemplated was that stated in connection with the bid agreed to be made, namely, the deficit between the amount of the bid of $117,000 and what he might have received from the State under such bid.

The contingency contemplated by the letter and the contract signed was that the State might eliminate certain work and materials and thus not pay Murray the $117,000; in which event the surety company was to pay the difference, i. e., as the contract provides in paragraph 3. This is the language: " Provided  *  *  * said sum of $117,000 shall be reduced by the  *  *  *  contract price of ary item eliminated by the State."

There need be no reformation in the contract. There is no mistake on the part of the surety company. All I can see is a cunning attempt upon the part of the plaintiff to distort the intent and purpose of his contract to secure moneys never contemplated by the parties to be paid.

I think the judgment for the defendant should be affirmed by the dismissal of the complaint on the ground that the plaintiff has failed to make a case under the contract.

Judgment reversed on the law and facts, with costs, and judgment directed in favor of the plaintiff for the sum of $11,287.71, with interest and costs.

The court reverses findings of fact 33, 34, 35, 38 and 39, and such findings of fact as are stated as conclusions of law; and finds that plaintiff completed the construction contract for which the State paid him $100,123.31; that items of the contract price of $5,588.98 were eliminated; that plaintiff is entitled to receive from the defendant the difference between $117,000 and the aggregate of the two sums mentioned.